# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 07-125 (RHK/SRN) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Javarlo Lasha Perry, | |
| Defendant. | |

Michelle E. Jones, Office of the United States Attorney, 300 South 4th Street, Suite 600, Minneapolis, Minnesota 55415, for Plaintiff

Reynaldo A. Aligada, Jr., Office of the Federal Defender, 300 South 4th Street, Suite 107, Minneapolis, Minnesota 55415, for Defendant

SUSAN RICHARD NELSON, United States Magistrate Judge

The above-captioned case comes before the undersigned United States Magistrate Judge on Defendant Javarlo Lasha Perry's Motion to Suppress Fruits of Unlawful Arrest and Search and Seizure (Doc. No. 14) and Motion to Suppress Statements (Doc. No. 15). This case has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1.

## I.    BACKGROUND

An Indictment was filed on April 11, 2007, charging Defendant with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Doc. No. 1.) This Court held a pretrial motions hearing on July 6, 2007. St. Paul Police Officers Chad Degree, Darryll Boerger, and Eric Vang-Sitcler testified at the hearing, and the following exhibits were received in

evidence:

> Gov't Ex. 1: a photograph of the interior of the VFW hall located at 820 Concordia Avenue,
>
> St. Paul, Minnesota;
>
> Gov't Ex. 2: a photograph of a media cabinet located on the stage of the VFW hall;
>
> Gov't Ex. 3: a photograph of electronic equipment inside the media cabinet; and
>
> Gov't Ex. 4: a photograph of a gun inside the media cabinet.

This matter is currently set for trial on August 6, 2007, before United States District Judge Richard H. Kyle.

## II.     FACTS

The following facts were elicited at the pretrial motions hearing.  On October 17, 2006, the St. Paul Police Department received information from a confidential informant that Defendant possessed narcotics and was wearing a bulletproof vest.  The informant said that Defendant was inside a VFW hall at 820 Concordia Avenue in St. Paul, located near the stage area.  The informant also described Defendant as wearing a brown, hooded sweatshirt, jeans, and boots.  St. Paul Police Officers Chad Degree, Darryl Boerger, Eric Vang-Sitcler, and Officer Vang-Sitcler's partner went to the VFW hall to investigate.  Officer Degree and Officer Boerger were familiar with Defendant, having encountered him several times before and arrested him once.

The VFW hall is a "members only" facility.  People gain entrance via a camera and buzzer system.  After the officers arrived at the VFW hall, they stood behind a group of eight people who were waiting outside the door.  When the door opened, the officers followed the group inside.  The officers did not explicitly seek or obtain permission to enter.

Once inside, the officers saw a stage area to the right, a bar directly ahead, and video games to the left.  There were about thirty people inside the building.  Officer Degree approached the bar area while the other three officers walked toward the stage, which was hidden behind a large, hanging projection screen.  Officer Boerger was the first to reach the stage area, where he  heard male voices talking behind the projection screen.  There was an opening about twelve to sixteen inches wide between the projection screen and the wall, and Officer Boerger looked through it.  He saw two men, one of whom was standing about five feet away and matched the description given by the informant and his own recollection of Defendant's appearance.   Defendant turned, with his right hand in his waistband, and pulled out a silver object, which Officer Boerger saw was a gun.  Officer Boerger then saw Defendant lean over, reach out, and drop the gun behind some electronic equipment located in a media cabinet about two feet away.    Officer Boerger heard a "clunk" as the gun dropped onto the wooden shelf.

Officer Boerger alerted the other officers that there was a gun on stage and indicated they should assist him.  Officer Vang-Sitcler approached the left-hand side of the stage and encountered a man who asked whether there was anything wrong and whether he could help the officers.  Officer Boerger could not fit through the opening between the projection screen and wall, so he hurried around to the other side of the screen, where there was a step to the stage.  By then, Officer Vang-Sitcler had reached the area behind the screen where Defendant was still standing, and after Officer Boerger arrived, he handcuffed Defendant.  Officer Boerger handcuffed the other man on stage, Sean Ross.  Before he left the area, Officer Boerger looked in the media cabinet and confirmed that the object Defendant had dropped was a gun.  Officer Degree also looked behind the electronic equipment and

saw the gun.

Officer Vang-Sitcler and Officer Boerger took Defendant and Ross into custody.  After Defendant was handcuffed, Officer Vang-Sitcler pat-searched him for weapons and placed him in a squad car.  At some point, Defendant complained that his shoulder hurt, and Officer Vang-Sitcler adjusted his handcuffs and fully searched Defendant incident to arrest.  He found a small plastic bag of suspected crack cocaine in Defendant's pants pocket.  Defendant said the drugs were not his and suggested that Officer Vang-Sitcler had planted them. During this encounter, Officer Vang-Sitcler made only comments relating to the readjustment of Defendant's handcuffs.  Defendant talked the entire way to the police station, expressing his feelings about the arrest.  Officer Vang-Sitcler asked no questions and made no comments.

## III.   DISCUSSION

### A.   Motion to Suppress Fruits of Unlawful Arrest and Search and Seizure

Defendant seeks to suppress the gun on the basis that the officers did not obtain either a warrant for or consent to enter the VFW hall.  He also seeks to suppress the crack cocaine as a fruit of the allegedly unlawful conduct.  The Government responds that Defendant did not have a reasonable expectation of privacy in the VFW hall, and thus he cannot challenge the officers' presence there.

A defendant has standing to challenge the admission of illegally obtained evidence only if his own constitutional rights were violated.  See Rakas v. Illinois, 439 U.S. 128, 134 (1978); see also United States v. Katz, 389 U.S. 347, 351 (1967) (explaining that "the Fourth Amendment protects people, not places.").  A person's Fourth Amendment rights are not infringed if that person "is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured

4

by a search of a third person's premises or property . . . ." Rakas, 439 U.S. at 134.  To succeed on a

Fourth Amendment challenge, the defendant must show that he had a subjective and reasonable

expectation of privacy in the area searched or the items seized.  See Minnesota v. Carter, 525 U.S. 83,

91 (1998).  The defendant bears the burden of establishing both a subjective expectation of privacy and

that the expectation is objectively reasonable, meaning one that society is willing to expect.  See

Minnesota v. Olson, 495 U.S. 91, 96-97 (1990).  In addition, "[a]n expectation of privacy in

commercial premises . . . is different from, and indeed less than, a similar expectation in an individual's

home."  New York v. Burger, 482 U.S. 691, 700 (1987).

Defendant cites three cases in support of his position.  In United States v. Swart, police officers

conducted a search of the outdoor premises surrounding an auto repair business, after the business had

closed and despite being asked by an employee to wait for the owner.  679 F.2d 698, 699 (7th Cir.

1982).  The court found that the owner had a reasonable expectation of privacy in the vehicle

identification numbers of cars parked on the premises because there was no general invitation to the

public to enter; the officers knew the business was closed; the cars were not in an area open to the

public; and the employee had asked the officers not to look around without the owner.  Id. at 701-02.

In Commonwealth v. Weimer, police officers acted on a tip that illegal gambling was occurring

inside a private hunting club.  396 A.2d 649, 650 (Pa. Super. 1978).  Access to the club was

controlled by a buzzer system and a one-way mirror in the door.  Id.  The officers pressed the button

and were admitted.  Id.  Once inside, the bartender at first questioned their membership but then served

them drinks.  Id.  After back-up officers arrived, the officers identified themselves and seized evidence

from the club.  Id.  A few weeks later, officers received another tip and returned to the club.  Id.  They

5

gained admittance by following another group inside.  Id. at 651.  The court found that the defendant

did not have a reasonable expectation of privacy because the club's security features were negated by

lax enforcement.  Id. at 652.  The court observed that a doorman would have been a more effective

security measure for excluding non-members.  Id.  Moreover, even if the defendant had a reasonable

expectation of privacy, the court thought that the officers' entry would not be improper because

"'(c)riminal activity is such that stealth and strategy are necessary weapons in the arsenal of the police

officer.'"  Id. at 652-53 (quoting Sherman v. United States, 356 U.S. 369, 372 (1958)).

          In Ouimette v. Howard, an individual illegally parked his car on a street outside of a private

club.  468 F.2d 1363, 1364 (1st Cir. 1972).  Police officers recognized the car from two previous

illegal parking incidents, during which the officers had entered the club unhindered to tell the owner to

move his car.  Id.  This time, when the officers entered the club, they saw the owner with a gun in his

hand.  Id. at 1365.  The court concluded that the individual had no reasonable expectation of privacy in

the club because the door was not locked; there was no doorman; officers had entered twice before;

and the officers were entitled to ask him to move his car.  Id.

          The Court has carefully considered Defendant's authority and concludes that the facts of this

case more closely resemble Ouimette and Weimer than Swart.  Although the VFW hall had a security

system in place, enforcement was lax.  The officers simply followed a group of people into the building,

unchallenged.  There was no doorman to control access to the facility.  Once the officers were inside

the hall, no one questioned their presence or asked them to leave.  In fact, the one person who spoke

with the officers asked if there was anything wrong or if he could help, which, if anything, ratified their

presence.  Accordingly, the Court finds that Defendant did not have a reasonable expectation of

privacy in the VFW hall, and he therefore may not challenge the officers' presence there.  As a result, his request to suppress the gun should be denied, and his request to suppress the crack cocaine as a fruit of illegal conduct correspondingly should be denied.

### B.    Motion to Suppress Statements

Defendant moves to suppress the statements he made to the officers on October 17, 2006.  He did not support the motion with a memorandum or otherwise articulate a particular basis for suppression.

Nevertheless, the Court has considered the circumstances under which Defendant made the statements and finds that the statements were spontaneous declarations.  No Miranda warning was necessary because the officers never subjected Defendant to express interrogation or its functional equivalent.  See Rhode Island v. Innis, 446 U.S. 291, 300-301 (1980).  Thus, the statements should not be suppressed.

## IV.    RECOMMENDATION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY**

**RECOMMENDED** that:

1.    Defendant's Motion to Suppress Fruits of Unlawful Arrest and Search and Seizure

(Doc. No. 14) be **DENIED**; and

2.    Defendant's Motion to Suppress Statements (Doc. No. 15) be **DENIED**.

Dated:  July 24, 2007

s/ Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge

Pursuant to D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **August 8, 2007,** a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.   A party may respond to the objecting party's brief within ten days after service thereof.   A judge shall make a de novo determination of those portions to which objection is made.   This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.